

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3843 | **DATE** | 7/31/2002 |
| **CASE TITLE** | NANCY L. BEEVERS vs. NORTH SHORE COMMUNITY BANK & TRUST | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion to refer this case to the bankruptcy court is denied and this case is remanded to the Circuit Court of Cook County. Ruling date of August 1, 2002 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUL 3 1 2002 | |
| | Notified counsel by telephone. | | date docketed | 9 |
| ✓ | Docketing to mail notices. | | CDY docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | 02 JUL 31 AM 9:44 | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NANCY L. BEEVERS,

    Plaintiff,

v.

NORTH SHORE COMMUNITY
BANK & TRUST COMPANY, et al.

    Defendants.

No. 02 C 3843
Paul E. Plunkett, Senior Judge

DOCKETED
JUL 31 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff filed suit against defendants in state court alleging, among other things, that they fraudulently induced her to execute a mortgage on some real estate to secure a loan North Shore Community Bank ("the Bank") made to the company headed by plaintiff's husband. Defendants, who contend that this case is "related to [a] case[] under title 11," removed it to this Court. They now move to have the case referred to the bankruptcy court. For the reasons set forth below, the motion is denied and the case is remanded to the Circuit Court of Cook County.

## Facts

Nancy Beevers is married to Robert Beevers, president of the R&B Group ("R&B"). (Compl. ¶¶ 8-9.) Nancy has no interest in R&B, which is the subject of a chapter 11 proceeding in bankruptcy court. (Id. ¶ 18; Notice of Removal ¶ 2.)

On May 30, 2000, the Bank loaned R&B $1.5 million. (Compl. ¶ 12.) The loan was secured by R&B's accounts receivable, inventory and equipment. (Id., Ex A.) Nancy did not sign the promissory note for the loan, nor did she pledge any of her assets as security for it. (Id. ¶ 14.)

On May 31, 2001, the Bank extended and renewed the note. (Id. ¶ 15.) After doing so, the Bank asked Robert whether a piece of property in Aspen, Colorado that was identified on the Beevers' financial statement could be used to secure the loan. (Id. ¶¶ 16, 18.) Robert repeatedly told the Bank that the Aspen property could not be used as security for the loan because it was held in trust for Nancy, who had no interest in R&B. (Id.)

On August 25, 1991, Nancy went to the Bank and signed a single sheet of paper that she was told was just "a formality to complete [the Bank] file." (Id. ¶ 20.) That document was, in fact, a signature page that the Bank attached to a mortgage on Nancy's Aspen property. (Id. ¶ 21.) Subsequently, the Bank had the mortgage recorded as a lien on the Aspen property. (Id. ¶ 24.)

In October 2001, R&B lost a lawsuit filed against it by a third party. (Id. ¶ 29.) Ultimately, judgment was entered against R&B in the amount of $1.3 million. (Id.) At that point, Nancy decided to sell the Aspen property and lend R&B the proceeds so it could satisfy the judgment. (Id. ¶ 30.)

On January 29, 2002, Nancy entered into a contract to sell the Aspen property. (Id. ¶ 31.) On February 8, 2002, she learned that the Bank had recorded a mortgage against the property. (Id. ¶ 32.) Thereafter, Nancy tried to cancel the sale of the property, but the buyer threatened suit. (Id. ¶ 38.) As a result, Nancy went through with the sale, which closed on February 25, 2002. (Id. ¶ 48.) The Bank applied the net proceeds of the sale, slightly over $600,000.00, against the balance on R&B's loan. (Id. ¶ 51, Count I ¶ 6.)

In March 2002, Nancy filed a twelve-count complaint against the Bank and three of its employees for, among other things, rescission, fraud in the inducement and conversion. Defendants removed the case to this Court contending that it falls within the Court's jurisdiction because it is related to the R&B chapter 11 bankruptcy case.

## Discussion

This Court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The phrase "related to" is interpreted narrowly in this circuit "not only out of respect for Article III but also to preserve the jurisdiction of state courts over questions of state law involving persons not party to the bankruptcy." Home Ins. Co. v. Cooper & Cooper, Ltd., 889 F.2d 746, 749 (7th Cir. 1989). Thus, a case is related to a chapter 11 proceeding only if "it affects the amount of property available for distribution or the allocation of property among creditors." In re Xonics, 813 F.2d 127, 131 (7th Cir. 1987). A dispute between two creditors meets that standard, our court of appeals has said, "only if [it] involve[s] property of the estate or if resolving two creditors' intramural squabble will affect the recovery of some other creditor." In re Kubly, 818 F.2d 643, 645 (7th Cir. 1987).

Defendants say that the state court suit will impact the bankruptcy estate because it will determine the existence and amount of Nancy's claim and the amount of the Bank's claim. The Bank is half right. The state suit will resolve those issues, but it will not impact the bankruptcy estate because it will not affect the amount of property available for distribution or the recovery of any other creditor. The Bank has filed a secured claim against the estate for approximately $950,000.00. (See Defs.' Reply Mem. Supp. Mot. Refer Bankr. Ct., Ex. 2, Proof Claim.) That claim

-3-

includes a credit for approximately $600,000.00, the money the Bank received from the sale of Nancy's Aspen property. (Id.) Nancy has also filed a secured claim against the estate to recover the $600,000.00 of her funds that the Bank applied to R&B's loan. See 11 U.S.C. § 509(a) ("[A]n entity . . . that has secured a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment."). If Nancy wins the state court suit, the Bank's secured claim will increase from about $950,000.00 to about $1.5 million and Nancy's claim will disappear, leaving a total of $1.5 million in secured claims.[1] If Nancy loses the state court suit, the Bank keeps its $950,000.00 secured claim and Nancy keeps her $600,000.00 secured claim, leaving a total of $1.5 million in secured claims.[2] In other words, the total amount of secured claims asserted against the estate by these two creditors will remain the same, regardless of the outcome of the state court suit.

That description of the claims, defendants argue, is inaccurate. Though Nancy filed a secured claim, the debtor has scheduled her claim as unsecured. Thus, defendants say, the outcome of the

---

[1] In an adversary proceeding against the Bank, the debtor alleges that the Bank is over secured. (Pl.'s Mem. Opp'n Removal, Ex. B ¶ 18.) Defendants apparently agree, as they do not argue that the Bank will have an unsecured claim for $600,000.00 if it loses the state court suit, as it would if it were under secured. See 11 U.S.C. § 506(a) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.")

[2] Nancy's claim would, however, be subordinate to the Bank's. See 11 U.S.C. § 509(c) ("The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.").

state suit will determine whether her claim is secured or unsecured, a determination that could affect the recovery of other creditors of the estate.

Regardless of its outcome, however, the state court suit will not determine that Nancy is an unsecured creditor. The issue in the state suit is whether Nancy, in fact, mortgaged her property to secure the loan to R&B. If the state court determines that she did, she loses the suit but gains a secured claim against the debtor by virtue of 11 U.S.C. 509(a). If the state court determines that she did not, Nancy wins the state court suit, collects $600,000.00 from the Bank, and has no claim at all against the estate. Thus, the state court suit will determine whether Nancy is a secured creditor of R&B or not a creditor at all, not that she is an unsecured creditor.

In short, the outcome of the state court suit between Nancy and the Bank will neither affect the amount of property in the R&B bankruptcy estate nor the recovery of any of its other creditors.[3] Thus, this suit is not related to the R&B bankruptcy. Because "related to" jurisdiction is the only purported basis for the Court's subject matter jurisdiction, this case must be remanded to state court.

## Conclusion

For the reasons set forth above, defendants' motion to refer this case to the bankruptcy court is denied and this case is remanded to the Circuit Court of Cook County.

**ENTER:**

UNITED STATES DISTRICT JUDGE

DATED: July 31, 2002

---

[3] The Court assumes that there are other creditors, though the parties have not identified any or indicated whether such creditors are secured or unsecured.